UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DAVID B. TRIEMERT,            CIV. NO. 13-1312 (PJS/JSM)

    Plaintiff,            REPORT AND RECOMMENDATION

v.

WASHINGTON COUNTY, et.al.,

    Defendants.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon plaintiff's Motion for Emergency Injunctive Relief [Docket No. 4]. Plaintiff David Triemert appeared pro se. Nigel H. Mendez, Esq. appeared on behalf of Washington County and the Washington County defendants. Ryan M. Zipf, Esq. appeared on behalf of defendant Tom McCarthy.[1]

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).

**I.   BACKGROUND**

    **A.   Plaintiff's Complaint**

Plaintiff David B. Triemert, who is pro se, sued Washington County, Minnesota; Sheriff William Hutton; Chief Deputy Sheriff Dan Starry; Commander Cheri Dexter; Sheriff's Deputy Nick Sullivan (collectively, the "Washington County defendants"); and Tom McCarthy, Mayor of Lake St. Croix Beach, following a traffic stop on May 29, 2013,

---

[1] Defendant McCarthy joined in Washington County's opposition to Triemert's motion and did not file a separate memorandum of law.

at which time Triemert could not produce a valid driver's license, vehicle registration or proof of insurance. Complaint, ¶¶24-35. At this traffic stop, Triemert told defendant Deputy Sullivan that he was not "driving" the vehicle and handed Deputy Sullivan a "Private Property Notice to Law Enforcement Officers," which appears to be a notice Triemert created stating that he had removed his motor vehicle from registration and jurisdiction of "this state." Complaint, Ex. A. Triemert also handed Deputy Sullivan a Notice to the State of Minnesota Removing a Motor Vehicle from Jurisdiction of this State. Id., Ex. B. This appears to be another notice Triemert drafted informing the Minnesota Department of Public Safety that he was "removing" his vehicle from registration by "the State" and enclosing his Minnesota license plates. Id. In lieu of displaying state-issued license plates on his car, Triemert attached "message plates" that state "Private Property-Not a Motor Vehicle under the jurisdiction of Minn. Stat. 168/169 or U.S. Code 18-31, or 'This State.' WashingtonCountyCorruption.Com."[2] Complaint, ¶50. Triemert refused to answer Deputy Sullivan's questions and refused to cooperate with tests Deputy Sullivan attempted to administer.[3] Deputy Sullivan arrested Triemert for obstructing legal process, had Triemert's vehicle towed, and transported Triemert to jail. Id., ¶¶36, 42, 43. Triemert was booked and alleged that he spent the next twenty-four hours "with a group of the most hardened criminals in the county jail," awaiting a hearing. Id., ¶68.

---

[2] www.washingtoncountycorrpution.com is Triemert's website, on which he details in a section of the website entitled "Most Wanted" his grievances against various Washington County officials, including defendants Hutton, Starry, and Sullivan.

[3] Triemert does not describe these tests, but as he alleged that he was charged with 4th degree DUI, (Complaint, ¶37), the Court presumes he was referencing a field sobriety test.

Triemert alleged that he was arrested and detained in retaliation for "linking" Sheriff Hutton to public corruption and for publicly opposing the addition of a police substation to the Lake St. Croix Beach City Hall. Id., ¶¶54-59. Triemert had attended a Lake St. Croix Beach City Council meeting on May 20, 2013, and parked his vehicle in front of City Hall. Id., ¶56. Triemert alleged that Mayor McCarthy asked him to park around the corner and that Mayor McCarthy was "not fond" of Triemert's "message" plates. ¶Id., ¶¶56, 59.

Triemert claimed that Mayor McCarthy set him up for the illegal traffic stop by contacting either Deputy Sullivan or the Washington County Sheriff's Department to notify them that Triemert was in the area with his "message" plates. Id., ¶60. Triemert also claimed that Deputy Sullivan and another deputy, Deputy Volk, were "lying in wait" to pull him over to "satisfy certain individuals, including McCarthy." [4] Id., ¶61.

Triemert spent the next day in jail and on the third day, May 31, 2013, he was notified that he would appear before Judge John Hoffman. Id., ¶76. Triemert had previously filed eight criminal charges against Judge Hoffman. Id. Judge Hoffman released Triemert on his own recognizance. Id., ¶77.

Based on the stop and arrest, Triemert alleged the following causes of action: (1) his Fourteenth Amendment right to "Life, Liberty and the Pursuit of Happiness" was

---

[4] These allegations are different from the allegation at ¶18 of the Complaint, in which Triemert alleged that he was stopped on May 29, 2013, as he was driving home from work. In the Memorandum of Law in support of his request for emergency injunctive relief, Triemert clarified that he was "set up" nine days after the City Council meeting at which Mayor McCarthy asked him to move his car. Plaintiff's Memorandum of Law in Support of Emergency Injunctive Relief ("Pl. Mem."), p. 8 [Docket No. 6]. (Triemert did not number the pages of his brief. The Court is referencing the page numbers assigned through CM/ECF).

violated; (2) he was subjected to unreasonable seizure and illegal arrest in violation of the Fourth Amendment; (3) he was falsely imprisoned by Deputies Sullivan and Volk[5]; (4) defendants are liable for intentional infliction of emotional distress; (5) Deputies Sullivan and Volk committed aggravated assault on him; (6) defendants violated his Fifth Amendment rights; (7) defendants engaged in a civil conspiracy or colluded to deprive him of his "rights property and personal freedom while aimed at destroying [him] financially, and ruining his family relationships. . . ." Id., ¶¶97-128. As relief, Triemert sought a declaratory judgment regarding defendants' alleged constitutional violations, compensatory and punitive damages, and an injunction against Washington County sheriff's deputies and "law enforcement agencies within this Court's jurisdiction" to cease interfering with Triemert's ability to drive. Id., Request for Relief, ¶¶a-i.

The gist of Triemert's legal theory is that the definition of "driving" in the United States Transportation Code ("USTC")[6] and all state transportation codes derived from the USTC, "refers to persons who are licensed by occupation and operating a motor vehicle in commerce engaged in the commercial purpose of hauling freight/cargo or passengers or both." Id., ¶25. When he was arrested on May 29, 2013, Triemert was not "driving" or operating a "motor vehicle" or "engaged in any activity or "engaged in any commercial activity or purpose in the hauling of freight or passengers, according to this definition. Id., ¶26. Additionally, the Code defines "motor vehicle" as a contrivance used for commercial purposes. Id., Ex. A (Private Property Rights Notice referencing

---

[5] Deputy Volk has not been named as a defendant.

[6] The Court cannot locate this definition of "driving" in Title 49, Transportation.

4

United States Code "18/31").[7] Triemert claimed he was "traveling" (not driving) in a "private automobile" (not a motor vehicle) when he was unlawfully stopped and arrested.

### B. Triemert's Motion for Emergency Injunctive Relief

After filing his lawsuit, Triemert moved for emergency injunctive relief. [Docket No. 4]. Triemert claimed that he was living in fear for his safety and has been unable to travel displaying his "message" plates without risking being "unlawfully pulled over, assaulted, arrested, kidnapped and jailed or experiencing great bodily harm or death." Pl. Mem., p. 3. Triemert stated that he has been unable to go to work to support his family because he is "living in fear" that he will be pulled over again and charged. Text of Plaintiff's Oral Argument on Emergency Motion for Injunctive Relief ("Pl. Text Mem."), p. 3 [Docket No. 23].[8] Triemert sought an order "telling the Washington County Sheriff's Office to leave [him] alone unless [he] violate[s] common law or some other statute outside of Minnesota Traffic Laws . . . while traveling in [his] private automobile. Id., p. 4.

Defendants opposed Triemert's motion on the grounds that he had not perfected service on the Washington County defendants and, therefore, the Court lacked jurisdiction over those defendants and because Triemert did not meet any of the

---

[7] This definition of "motor vehicle" is found in 18 U.S.C. §31(a)(6), Crimes and Criminal Procedure. Triemert does not say why he believes this definition applies to him.

[8] Triemert memorialized his arguments in a document, which he brought to the motion hearing and read into the record. The Court allowed Triemert to file the document.

5

standards of a preliminary injunction. Defendants' Memorandum of Law in Opposition to Motion for Emergency Injunctive Relief ("Def. Mem."), pp. 2-8 [Docket No. 17].

## II. STANDARD OF REVIEW

A preliminary injunction "is an extraordinary remedy never awarded as a matter of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 9 (2008). "When evaluating whether to issue a preliminary injunction [or a TRO], a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest." Roudachevski v. All-American Care Centers, Inc., 648 F.3d 701, 705 (8th Cir. 2011) (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). [9] "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." West Publ'g. Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1222 (8th Cir. 1986), cert. denied, 479 U.S. 1070 (1987) (citation omitted). "If a party's likelihood of succeeding on the merits is sufficiently low, a court may deny a preliminary injunction even if the other three factors—irreparable harm, balance of harms, and the public interest—weigh in the party's favor." Gottlieb v. Willis, Civ. No. 12-2637 (PJS/JSM), 2012 WL 5439274 at *2 (D. Minn. Nov. 7, 2012) (citing CDI Energy

---

[9] Courts in the Eighth Circuit apply the same standards to a request for a preliminary injunction and temporary restraining order. See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project, 877 F.2d 707, 708 (8th Cir.1989) (affirming the district court's application of the Dataphase factors to a motion for a temporary restraining order); Jackson v. Nat'l Football League, 802 F. Supp. 226, 229 (D. Minn. 1992) (concluding that the Dataphase factors apply to requests for temporary restraining orders and preliminary injunctions) (citations omitted).

Servs., Inc. v. West River Pumps, Inc., 567 F.3d 398, 402 (8th Cir. 2009) ("the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied")); Mid–America Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005) ("an injunction cannot issue if there is no chance of success on the merits").

## III. DISCUSSION[10]

### A. This Court Lacks Jurisdiction Over the Washington County Defendants

The Washington County defendants indicated that the proof of service documents filed with the Court indicated that the summonses for all of the defendants, except Mayor McCarthy, were served on Betty Lokker, a Washington County Deputy. There is no legal basis for effecting service in this way and as a result, this Court lacked jurisdiction to grant Triemert's motion as to those defendants. Def. Mem., pp. 2-3. Since that first attempt at service, Triemert claimed that he perfected service on "all defendants" on July 1, 2013. (Pl. Text. Mem., p. 22).

The affidavits of service filed on CM/ECF indicate that Sullivan, Starry, Hutton, Dexter, Washington County, and Mayor Tom McCarthy were served on July 1, 2013 by substituted service on Steve Gransee, whose position is not indicated on the proof of service. [Docket No. 21]. At the motion hearing, counsel for the Washington County defendants stated that a "packet" (presumably containing the summonses) had been dropped off at the Washington County Property Records Department the day before the

---

[10] Triemert is unrepresented. As a result, this Court applied the traditionally liberal construction afforded to pro se pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) (pro se litigants are held to a lesser pleading standard than represented parties).

7

hearing and previously a packet had been dropped off at the Washington County Sheriff's office intake department. Def. Mem., pp. 2-3. Neither constituted proper service. Counsel for Mayor McCarthy indicated that Mayor McCarthy was not properly served but was waiving his arguments regarding defective service.

Service on the County was required to be made either through the County Auditor or through service on the Chair of the County Board. Minn. R. Civ. P. 4.03(e)(1). The individual defendants had to be served individually. Minn. R. Civ. P. 4.03(a). Federal Rule of Civil Procedure 4(j)(2)(B) requires that service of process on a local government be made according to the manner prescribed by state law. As a result of Triemert's failure to perfect service on the County defendants this Court has no personal jurisdiction over these non-parties and the Court cannot issue an injunction against non-parties. Smith v. Ghana Commercial Bank, Ltd., 379 Fed. Appx. 542, 543 (8th Cir. 2010) ("we agree with the district court that Smith failed to effect service of process, and that the court thus lacked personal jurisdiction over defendants.") (citing Vandelune v. 4B Elevator Components Unlimited, 148 F.3d 943, 948 (8th Cir.1998)). On this basis, Triemert's motion for a temporary restraining order against the Washington County defendants should be denied.

However, even assuming this Court had jurisdiction over the Washington County defendants, the Court would recommend the denial of his motion as to all defendants on its merits.

### B. Triemert's Motion Fails on its Merits

#### 1. Triemert is Unlikely to Prevail on the Merits

The importance of the "likely to succeed on the merits" factor of the Dataphase analysis is heightened when party seeks to enjoin the application of a "duly enacted state statute." Planned Parenthood Minn. v. Rounds, 530 F.3d 724, 732-33 (8th Cir. 2008). In those cases, the plaintiff must make "a more rigorous threshold showing" than is normally required. Id. at 730, fn. 6. This higher standard "'reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.'" Id. at 732 (quoting Able v. United States, 44 F.3d 128, 131 (2d Cir.1995) (per curiam)). "If the party with the burden of proof makes a threshold showing that it is likely to prevail on the merits, the district court should then proceed to weigh the other Dataphase factors." Id.

Here, the Court has no difficulty concluding that Triemert is unlikely to succeed on the merits of his claim. Triemert's sole argument on this factor was as follows: "Is my motion likely to succeed on the merits? The only thing that would make it unlikely that I will succeed on the merits is politics—everything is political." Def. Text Mem., p. 6. According to Triemert, political pressure is being exerted on this Court by "the-Powers-That-Be" to deny his motion. Id., p. 7. This statement is unsupported by any facts or evidence and this Court completely rejects Triemert's inflammatory and unfounded statement. The Court also disputes Triemert's statement that he is not challenging Minn. Stat. Chapter 169. Id., p. 11. The whole point of Triemert's Complaint and the motion for injunctive relief is that Washington County law

enforcement officials did not have a right to stop him from driving with "message" plates, rather than state-issued plates, and that he had a right to drive without a valid Minnesota driver's license in his possession. See Complaint, ¶¶25, 26, 40, 41, 46, 47, 48, 50, 52, Exs. A, B.

Minnesota courts have repeatedly upheld the provisions of Chapter 169 as constitutional and there is nothing unique about Triemert's claims that would lead a court to any opposite conclusion. See State v. Palkovich, 1995 WL 673022 at * 2 (Minn. Ct. App. 1995) (Chapter 169 requirement that drivers show proof of insurance does not implicate right to travel); State v. Kuball, 1989 WL 90327 at *1 (Minn. Ct. App. 1989) (state statutes requiring motor vehicle registration, insurance and license fees are constitutional); State v. Weisman, 1988 WL 113752 at *3 (Minn. Ct. App. 1988) (rejecting appellant's argument that various Minnesota motor vehicle statutes, including requirement to display license plates were unconstitutional and noting that appellant had confused the constitutional "right to travel" with the privilege of operating a motor vehicle on public highways, which may be regulated by the public authority), review denied, Dec. 16, 1988, cert. denied 489 U.S. 1080 (1989); Anderson v. Commissioner of Highways, 126 N.W.2d 778, 784 (Minn. 1964) ("Permission to operate a motor vehicle upon the public highways is not embraced within the term 'civil rights' and is in the nature of a license or privilege. While the privilege is a valuable one, and may not be unreasonably or arbitrarily taken ways, its enjoyment depends on compliance with conditions prescribed by law and is ways subject to such regulation and control as public authority may see fit to impose under the police power in the interests of public safety and welfare.")

Furthermore, Triemert has provided no support for his theory that his driving privileges are not governed by state law. Triemert's ability to drive in the State of Minnesota is regulated by the Minnesota statutes, not by the United States Department of Transportation.

This Court has concluded that Triemert is unlikely to succeed on the merits of his claims, particularly in light of the heightened standard required under Planned Parenthood. The Court could end its analysis with this determination, but in the interests of thoroughness, the Court will analyze the remaining Dataphase factors.

### 2. Threat of Irreparable Harm

The Eighth Circuit has "repeatedly emphasized the importance of a showing of irreparable harm." Caballo Coal Co. v. Indiana Mich. Power Co., 305 F.3d 796, 800 (8th Cir. 2002). The failure to show irreparable harm is a reason in and of itself to deny motion for preliminary injunctive relief. Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) ("Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction."); C.S. McCrossan Constr. v. Minnesota Dept. of Transp., Civ. No. 13-923 (RJK/JSM), 2013 WL 2278037 at *5 (D. Minn. May 6, 2013) (beginning Dataphase analysis with irreparable harm and noting that "[i]ndeed, although likelihood of success is an important consideration, [e]ven when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm." (quotations and citations omitted). Additionally, "establishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'" Taxpayers' Choice Volunteer Comm. v. Roseau County Bd. of Comm'rs., 903 F. Supp. 1301, 1308 (D. Minn. 1995) (quoting

ECRI v. McGraw–Hill, Inc., 809 F.2d 223, 225 (3d Cir.1987)). "'[P]ossible or speculative harm is not enough' to justify a preliminary injunction." Id. (quoting Bloom v. O'Brien, 841 F. Supp. 277, 279 (D.Minn.1993)).

Triemert alleged that he has been unable to work and support his family because he is afraid that if he drives his car with the "message" plates, he will be unlawfully pulled over and charged with more offenses. Pl. Text. Mem., p. 3. This allegation is insufficient to sustain a finding of irreparable harm. To begin with, Triemert's statement is wholly unsupported. There is no evidence in the record, other than his own unsworn statement, regarding his alleged inability to work. Second, the harm that Triemert alleges is completely speculative. In fact, Triemert has alleged that he drove his vehicle for two-and-a-half months with the "message" plates without being stopped. Complaint, ¶53; Pl. Text Mem., p. 5. This Court has nothing before it to indicate that Triemert will be stopped again. "Possible or speculative harm is not enough to justify a preliminary injunction." Taxpayer' Choice Volunteer Comm., 903 F. Supp. at 1309.

Triemert's Complaint also alleged that as a result of the stop, his commercial driver's license was revoked for one year and that he can no longer drive. Complaint, ¶90. There is no evidence in the record that this is true. But even if true, the Court has no facts before it upon which it could conclude that the temporary loss of his driver's license constitutes "irreparable harm." For example, while Triemert stated that he was unable to work, he provided no facts to show that he has no other means for getting to work other than driving. Moreover, if suspension or revocation of a driver's license alone was sufficient to obtain emergency injunctive relief, every driver subject to

12

suspension or revocation would make the same argument. On these facts, the Court concludes that Triemert has not met his burden to show irreparable harm.

### 3. Balance of Harms

The Washington County defendants argued that an order from this Court allowing Triemert to disregard Minnesota's traffic laws and preventing law enforcement from enforcing those laws would create more harm to them than to Triemert. Def. Mem., p. 7. This Court agrees. The effect of granting Triemert's motion for injunctive relief would be to usurp the state's authority under Chapter 169, to absolve Triemert from his obligation to comply with Minnesota traffic laws and to restrain law enforcement officials from enforcing Minnesota's traffic laws against Treimert. The harm created by such an order vastly outweighs any harm to Triemert in not granting the relief he seeks.

### 4. Public Interest

Under the fourth Dataphase factor, the Court considers the public interest. Dataphase Sys., Inc., 640 F.2d at 113. "The state's interest in the safety of its roadways is considerable." Ronwin v. Dunham, 818 F.2d 675, 678 (8th Cir. 1987) (citing Mackey v. Montrym, 443 U.S. 1, 17 (1979) (the state has a "paramount interest . . . in preserving the safety of its public highways."), Dixon v. Love, 431 U.S. 105, 114 (1977) ("important public interest in safety on the roads and highways, and in the prompt removal of safety hazards")). Based on this factor, this Court concludes that there is a strong public interest in the enforcement of Minnesota's traffic laws, which require that drivers be licensed, carry proof of registration and insurance, and display state-issued plates on their vehicles. The Court rejects as meritless Triemert's argument that his "nearly flawless" driving record supports a conclusion that there is no

harm to the public interest if he is allowed to drive without a license, proof of insurance or state-issued plates. Pl. Text Mem., p. 6. The public interest is served by all drivers obeying duly enacted traffic statutes, not relieving those with good driving records from compliance.

### C. Conclusion

Based on the Dataphase factors set forth above, this Court finds that Triemert's motion for emergency injunctive relief should be denied.

## IV. RECOMMENDATION

For the reasons set forth above, it is recommended that:

Plaintiff's Motion for Emergency Injunctive Relief [Docket No. 4] be **DENIED**.

Dated: August 16, 2013    *Janie S. Mayeron*
　　　　　　　　　　　　　JANIE S. MAYERON
　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 30, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.