UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


DAVID B. TRIEMERT,                                      CIVIL NO. 13-1312 (PJS/JSM)

      Plaintiff,

v.                                                      <u>REPORT AND RECOMMENDATION</u>

WASHINGTON COUNTY, et.al.,

      Defendants.


JANIE S. MAYERON, United States Magistrate Judge

      The above matter came on before the undersigned upon Defendant City of Lake St. Croix Beach Mayor Tom McCarthy's Motion to Dismiss Complaint [Docket Nos. 13, 24]; and Defendants' Washington County Sheriff William Hutton, Chief Deputy Dan Starry, Commander Cheri Dexter and Sheriff's Deputy Nick Sullivan Motion to Dismiss Complaint [Docket No. 29]. These motions were decided on the papers pursuant to this Court's August 20, 2013 Order. <u>See</u> Docket No. 38.

      This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).

## I.    BACKGROUND

### A.    <u>Plaintiff's Complaint</u>

      Plaintiff David B. Triemert, who is <u>pro</u> <u>se</u>, sued all of the defendants – Washington County, Minnesota, Sheriff William Hutton, Chief Deputy Sheriff Dan Starry, Commander Cheri Dexter, and Sheriff's Deputy Nick Sullivan (collectively, the

"Washington County defendants"), and Tom McCarthy, Mayor of Lake St. Croix Beach –
following a traffic stop on May 29, 2013, at which time Triemert was unable to produce a
valid driver's license, vehicle registration or proof of insurance. Complaint, ¶¶ 24-35. At
this traffic stop, Triemert told Deputy Sullivan that he was not "driving" the vehicle and
handed Deputy Sullivan a "Private Property Notice to Law Enforcement Officers."
Complaint, Ex. A. This document appears to be a notice Triemert created stating that
he had removed his motor vehicle from registration and jurisdiction of "this state." Id.
Triemert also handed Deputy Sullivan a Notice to the State of Minnesota Removing a
Motor Vehicle from Jurisdiction of this State. Id., Ex. B. This appears to be another
notice Triemert drafted informing the Minnesota Department of Public Safety that he
was "removing" his vehicle from registration by "the State" and enclosing his Minnesota
license plates. Id. In lieu of displaying state-issued license plates on his car, Triemert
attached "message plates" stating "Private Property-Not a Motor Vehicle under the
jurisdiction of Minn. Stat. 168/169 or U.S. Code 18-31, or 'This State.'
WashingtonCountyCorruption.Com."[1] Complaint, ¶ 50. Triemert refused to answer
Deputy Sullivan's questions and refused to cooperate with tests Deputy Sullivan
attempted to administer.[2] Id., ¶ 34. Deputy Sullivan arrested Triemert for obstructing
legal process, had Triemert's vehicle towed, and transported Triemert to jail. Id., ¶¶ 36,

---

[1]     www.washingtoncountycorrpution.com is Triemert's website, on which he details
in a section of the website entitled "Most Wanted" his grievances against various
Washington County officials, including defendants Hutton, Starry, and Sullivan.

[2]     Triemert does not describe these tests, but as he alleged that he was charged
with 4th degree DUI, (Complaint, ¶ 37), the Court presumes he was referencing a field
sobriety test.

42, 43. Triemert was booked and spent the next 24 hours "with a group of the most hardened criminals in the county jail," awaiting a hearing. Id., ¶ 68.

Triemert alleged that he was arrested and detained in retaliation for "linking" Sheriff Hutton to public corruption and for publicly opposing the addition of a police substation to the Lake St. Croix Beach City Hall. Id., ¶¶ 54-59. Triemert had attended a Lake St. Croix Beach City Council meeting on May 20, 2013, and parked his vehicle in front of City Hall. Id., ¶ 56. Triemert alleged that Mayor McCarthy asked him to park around the corner and that Mayor McCarthy was "not fond" of Triemert's "message" plates. Id., ¶¶ 56, 59.

Triemert claimed that Mayor McCarthy set him up for the illegal traffic stop by contacting either Deputy Sullivan or the Washington County Sheriff's Department to notify them that Triemert was in the area with his "message" plates. Id., ¶ 60. Triemert also claimed that Deputy Sullivan and another deputy, Deputy Volk, were "lying in wait" to pull him over to "satisfy certain individuals, including McCarthy." Id., ¶ 61.

Triemert spent the next day in jail and on the third day, May 31, 2013, he was notified that he would appear before Judge John Hoffman. Id., ¶ 76. Triemert had previously filed eight criminal charges against Judge Hoffman. Id. Judge Hoffman released Triemert on his own recognizance. Id., ¶ 77.

Based on the stop and arrest, Triemert alleged the following causes of action: (1) violation by all defendants of his Fourteenth Amendment right to travel upon land in his private automobile, which deprived him of his right to "Life, Liberty and the Pursuit of Happiness" (Count I); (2) unreasonable seizure and illegal arrest by all individual defendants and Washington County in violation of the Fourth Amendment (Count II); (3)

a Monell[3] claim against Washington County relating to unreasonable seizure of his person in violation of his Fourth Amendment (Count III); (4) false imprisonment by Deputies Sullivan and Volk[4] (Count IV); (5) intentional infliction of emotional distress (Count V); (6) aggravated assault by Deputies Sullivan and Volk (Count XI); (7) violation of his Fifth Amendment due process rights against all defendants (Count XII); (8) civil conspiracy or collusion by all defendants to deprive him of his "rights property and personal freedom while aimed at destroying [him] financially, and ruining his family relationships. . . ." (Count XIII). Id., ¶¶ 97-128.

Triemert has sued all defendants, except Washington County, in their official and individual capacities. Id., ¶¶ 12-17.

As relief, Triemert sought a declaratory judgment regarding defendants' alleged constitutional violations, compensatory and punitive damages, and an injunction against Washington County Sheriff's deputies and "law enforcement agencies within this Court's jurisdiction" to cease interfering with Triemert's ability to drive. Id., Request for Relief, ¶¶a-i.

The focus of Triemert's legal theory is that the definition of "driving" in the United States Transportation Code[5] ("USTC") and all state transportation codes derived from the USTC, "refers to persons who are licensed by occupation and operating a motor vehicle in commerce engaged in the commercial purpose of hauling freight/cargo or passengers or both." Id., ¶ 25. When he was arrested on May 29, 2013, Triemert was

---

[3]    Monell v. New York City Dep't of Social Services, 436 U.S. 658, 694 (1978).

[4]    Deputy Volk has not been named as a defendant.

[5]    The Court cannot locate this definition of "driving" in Title 49, Transportation.

not "driving" or operating a "motor vehicle" or "engaged in any activity or "engaged in any commercial activity or purpose in the hauling of freight or passengers, according to this definition. Id., ¶ 26. Additionally, the Code defines "motor vehicle" as a contrivance used for commercial purposes. Id., Ex. A (Private Property Rights Notice referencing United States Code "18/31").[6] Triemert claimed he was "traveling" (not driving) in a "private automobile" (not a motor vehicle) when he was unlawfully stopped and arrested.

This matter presently comes before the Court on the Washington County Defendants and Mayor McCarthy's motions to dismiss.

**B.    Mayor McCarthy's Motion to Dismiss[7]**

Mayor McCarthy argued that Triemert's Complaint fails to allege any facts establishing that he violated any of Triemert's constitutional rights, let alone clearly established constitutional rights. See Defendant City of Lake St. Croix Beach Mayor Tom McCarthy's Memorandum of Law in Support of Motion to Dismiss Complaint [Docket No. 26], p. 6. As it relates to the Complaint's allegation that he violated Triemert's due process rights, Mayor McCarthy maintained that regardless of whether Triemert is asserting a substantive due process or a procedural due process claim, either such claim fails as a matter of law. Id. In particular, Mayor McCarthy argued that Triemert cannot sustain a substantive due process claim because the alleged conduct – reporting to law enforcement that Triemert was in the area with his "message" plates

---

[6]    This definition of "motor vehicle" is found in 18 U.S.C. §31(a)(6), Crimes and Criminal Procedure. Triemert does not say why he believes this definition applies to him.

[7]    Triemert failed to respond to Mayor McCarthy's motion to dismiss, despite being given the opportunity to so by this Court. See Docket Nos. 16, 38.

and not Minnesota license plates -- does not arise to the level of egregious, outrageous conduct that shocks the conscience, where Minnesota law requires that vehicles operating on public roads must be registered and display the license plates issued for the vehicle and prohibits the display of registration plates not issued to the vehicle. Id., pp. 6-7 (citing Minn. Stat. § 168.09, subd. 1; Minn. Stat. § 168.10, subd. 3). In addition, Mayor McCarthy asserted that Triemert has failed to state a procedural due process claim, as he does not have a liberty interest to declare his vehicle exempt from Minnesota state vehicle registration laws and drive without a state-issued license plates; there is no due procedural due process afforded to someone before a crime is reported; and Triemert will be afforded requisite due process as part of his pending criminal case. Id., pp. 7-8.

Further, Mayor McCarthy argued that Triemert's right to travel claim is meritless, as the United States Supreme Court and the Eighth Circuit have recognized the power of states to regulate the use of its highways, including vehicle registration, insurance requirements, and the licensing of drivers. Id., pp. 8-10.

With regard to Triemert's conspiracy claim, Mayor McCarthy asserted that this claim fails because the Complaint fails to set forth sufficient facts to suggest an agreement was made between the alleged conspirators, and the mere fact that Mayor McCarthy may have reported suspected criminal activity to police does not amount to a conspiracy. Id., pp. 10-11. Moreover, Mayor McCarthy maintained that there can be no conspiracy claim under 42 U.S.C. § 1983, because the Complaint fails to state a viable claim that he violated Triemert's constitutional rights merely by reporting his "message" plates to law enforcement. Id., p. 11.

Finally, Mayor McCarthy argued that the Complaint fails to state a claim for relief against him in his official capacity, as the Complaint fails to state the existence of an unconstitutional policy or custom that was the moving force behind any alleged constitutional violation and because Triemert failed to allege an underlying unconstitutional act by him.  Id., pp. 11-12.

### C.    Washington County Defendant's Motion to Dismiss[8]

The Washington County Defendants argued that the Complaint does not state any viable claims against defendants Sheriff William Hutton, Chief Deputy Dan Starry and Commander Cheri Dexter, as the Complaint does not assert any facts suggesting why they are named defendants.  See Defendants' Washington County, Sheriff William Hutton, Chief Deputy Dan Starry, Commander Cheri Dexter and Sheriff's Deputy Nick Sullivan Memorandum of Law In Support of Motion to Dismiss Complaint [Docket No. 31], pp. 4-5.

The Washington County Defendants also asserted that Triemert failed to allege a viable claim under § 1983, as his constitution right to travel was not violated by Washington County or Deputy Sullivan.  Id., p. 6.  Specifically, they argued that Minnesota laws regulating driving on public roads are not unconstitutional, and Minnesota has broad powers to regulate the use of its highways and to enforce such laws.  Id., pp. 6-7.  Under Minnesota law, operating, driving or parking a motor vehicle on any highway, unless the vehicle is registered with the state and has conspicuously displayed the number plates confirming valid registration, is prohibited; drivers are required to provide proof of insurance to a requesting peace officer; and driving upon a

---

[8]    Triemert failed to respond to Washington County Defendant's motion to dismiss, despite being given the opportunity to so by this Court.  See Docket Nos. 35, 38.

street or highway without a valid driver's license is prohibited. Id., p. 7. Because he admits in his Complaint that he had no State-issued license plates on his car, admitted that he did not produce a driver's license and proof of insurance when the officer who pulled him over requested this information, and the right to travel is not without limitations, Triemert's claim cannot survive a Rule 12(b)(6) motion. Id., p. 8.

The Washington County Defendants also argued that Triemert failed to state viable substantive due process claim because none of the allegations against Washington County or Deputy Sullivan shock the conscience, since Triemert was stopped for violating state law as any other citizen would be. Id., pp. 9-10. Any procedural due process claims fail because defendants did not deprive Triemert of any constitutionally protected right, since it was Triemert's decision to purposefully and willfully ignore the laws of Minnesota that led to his being stopped and subsequently arrested. Id., pp. 10-11.

As to Triemert's conspiracy claim, while Triemert alleges that the defendants engaged in communications to deprive him of his personal freedom to travel, the Washington County Defendants asserted that the claim is deficient because he did not assert who was involved in this alleged conspiracy, when the communication occurred, the medium of the communication, nor the result of the communication. Id., pp. 11-12. In addition, even if a communication or conspiracy existed, the Washington County Defendants claimed that the Complaint does not adequately state a claim that Triemert was denied a constitutionally protected right, and therefore, there can be no viable conspiracy claim. Id., p. 12.

The Washington County Defendants also argued that Triemert's <u>Monell</u> claim against Washington County fails, despite the fact that he alleged in the Complaint that "'Washington County developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons'" and that "'it was the "policy and/or custom'" of the County to inadequately supervise and train its employees, as there are no facts in the Complaint that support these bare legal assertions. <u>Id.</u>, pp. 12-13 (quoting Complaint, ¶¶ 103, 104).

In addition, Washington County Defendants contended that Triemert's claims that Defendant Deputies Sullivan and Volk violated his constitutional right under the Fourth Amendment, when they seized, arrested, and booked Triemert into the Washington County Jail, without a warrant and without probable cause to believe he had committed a crime, fails to state a claim for relief. <u>Id.</u>, pp. 13-14 (quoting Complaint, ¶ 100). In particular, they argued that based on the allegations in the Complaint – including Triemert's admission that his vehicle did not have Minnesota plates, his refusal to provide a driver's license or proof of insurance when asked by Deputy Sullivan, and his refusal to answer any questions or perform any tests that Deputy Sullivan attempted to ask or administer – Deputy Sullivan was merely enforcing duly enacted laws when he stopped and interacted with Triemert. <u>Id.</u>, p. 14 (quoting Complaint, ¶¶ 24, 27, 34, 36, 50).

Finally, the Washington County Defendants claimed that Triemert's state law claims against Deputy Sullivan fail to state claim for relief. <u>Id.</u>, pp. 14-18.

## II.  STANDARD OF REVIEW

Defendants have moved for dismissal under Rule 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most

favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint." Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 662 (internal quotation marks and citations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Id. at 678 (internal quotation marks and citations omitted).

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss. But this does not mean that only the complaint itself may be reviewed.

> "If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The court, however, "may consider some materials that are part of the public record or do not contradict the complaint, as well as

> materials that are necessarily embraced by the pleadings."
> <u>Porous Media Corp. v. Pall Corp</u>., 186 F.3d 1077, 1079 (8th
> Cir. 1999) (internal citation and punctuation omitted).

<u>Little Gem Life Sciences, LLC v. Orphan Medical, Inc.</u>, 537 F.3d 913, 916 (8th Cir. 2008) (emphasis added).

## III.    DISCUSSION

### A.    <u>Claims against Washington County Defendants Starry and Dexter</u>

To state an actionable civil rights claim under 42 U.S.C. § 1983, a complainant must allege a set of historical facts showing that the named defendants violated the complainant's federal constitutional rights while acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  To establish a defendant's liability in a civil rights action "requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution.  <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1208 (8th Cir. 1990); <u>Speed v. Ramsey County</u>, 954 F. Supp. 1392, 1397 (D. Minn. 1997) (same).  In other words, civil rights claimants must plead facts showing each named defendant's personal involvement in alleged constitutional wrongdoing.  <u>Ellis v. Norris</u>, 179 F.3d 1078, 1079 (8th Cir. 1999); <u>see</u> <u>also</u> <u>Beck v. LaFleur</u>, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil rights claims, because plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim").

Here, Triemert has failed to state an actionable § 1983 claim against Washington County defendants Starry and Dexter, because his Complaint does not describe anything that any of these two defendants specifically did, or failed to do, that allegedly

violated his constitutional rights.[9]  As such, the § 1983 claim against these defendants should be dismissed without prejudice.

### B.  Counts I and XII--Right to Travel Claims Against All Defendants

In Count I, Triemert asserted that defendants' actions of having him pulled over because his vehicle had blue "message" plates; asking him for his driver's license, registration, and proof of insurance; attempting to have him answer questions or cooperate with any testing; and his resulting arrest violated his constitutional right to travel in his private automobile under the Fifth and Fourteenth Amendments.  See Complaint, ¶¶ 24, 34, 35, 37, 51-52, 59-60, 83, 85, 90, 92, 95.  Similarly, in Count XII, Triemert alleged that defendants violated his constitutional rights under the Fifth and Fourteenth Amendments by infringing on his right to travel in his private automobile.  Id., ¶¶ 115-21.

Under Minnesota law, "[n]o person shall operate, drive, or park a motor vehicle on any highway unless the vehicle is registered in accordance with the laws of this state and has the number plates or permit confirming that valid registration or operating authority has been obtained."  Minn. Stat. § 169.79, subd. 1.  The plates must be displayed on the vehicle.  Minn. Stat. § 168.09, subd. 1.  A motor vehicle is defined as "every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires," and "highway" is defined as "the entire width between boundary lines of any way or place where any part thereof is open to the use of the public, as a matter of right, for the purposes of vehicular traffic."  Minn. Stat. §

---

[9]      While the Washington County Defendants also argued that Triemert alleged no facts as to Hutton, he did allege that Sutton was responsible for placing him with a "group of the most hardened criminals in the county jail," while awaiting a hearing after his arrest.  Id., ¶ 68.

169.011, subds. 42, 81. Further, Minnesota law provides that Additionally, "[e]very driver shall have in possession at all times when operating a vehicle and shall produce on demand of a peace officer proof of insurance in force at the time of the demand covering the vehicle being operated." Minn. Stat. § 169.791, subd. 2. Likewise, a "person shall not drive a motor vehicle upon a street or highway in this state unless the person has a valid license under this chapter for the type or class of vehicle being driven," and "[e]very licensee shall have the license in immediate possession at all times when operating a motor vehicle and shall display it upon demand of a peace officer. . . ." Minn. Stat. §§ 171.02, Subd. 1(a), 171.08.

While the word "travel" is not contained in the Constitution or its Amendments, "[t]he 'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence." Saenz v. Roe, 526 U.S. 489, 498 (1999) (quoting United States v. Guest, 383 U.S. 745, 757 (1966)); see also Minnesota Senior Federation, Metropolitan Region v. U.S., 273 F.3d 805, 809 (8th Cir. 2001).

According to the Supreme Court, the right to travel "embraces at least three different components":

> It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

Saenz, 526 U.S. at 500.

However, as the Supreme Court has made clear:

> The use of the public highways by motor vehicles, with its consequent dangers, renders the reasonableness and necessity of regulation apparent. The universal practice is to

> register ownership of automobiles and to license their drivers. Any appropriate means adopted by the states to insure competence and care on the part of its licensees and to protect others using the highway is consonant with due process.

Reitz v. Mealey, 314 U.S. 33, 36 (1941), overruled in part on other grounds by Perez v. Campbell, 402 U.S. 637 (1971).

It is beyond dispute that states may impose driver licensing and vehicle registration requirements upon their citizens:

> In the absence of national legislation covering the subject, a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles,-those moving in interstate commerce as well as others. And to this end it may require the registration of such vehicles and the licensing of their drivers, charging therefor reasonable fees graduated according to the horse-power of the engines,-a practical measure of size, speed, and difficulty of control. This is but an exercise of the police power uniformly recognized as belonging to the states and essential to the preservation of the health, safety, and comfort of their citizens. . . .

Hendrick v. State of Maryland, 235 U.S. 610, 622 (1915); see also South Carolina State Highway Department v. Barnwell Bros., 303 U.S. 177, 189 (1938) ("In the absence of national legislation especially covering the subject of interstate commerce, the state may rightly prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens.") (marks and citation omitted); Morris v. Duby, 274 U.S. 135, 143 (1927) ("[T]he state may rightly prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens.").

Minnesota's requirements of displaying Minnesota plates, registering a vehicle, requiring proof of insurance, and imposing licensing requirements, comports with the safe use of the roads in Minnesota. Thus, the Court finds that the statutory requirements imposed on Triemert, as set forth in the Complaint, did not impede with his constitutional right to travel. Indeed, Minnesota courts have repeatedly upheld the provisions of Chapter 169 as constitutional and there is nothing unique about Triemert's claims that would lead a court to any other conclusion. See State v. Palkovich, No. C3-95-62, 1995 WL 673022, *2 (Minn. Ct. App. Nov. 14, 1995) (Chapter 169 requirement that drivers show proof of insurance does not implicate right to travel); State v. Kuball, No. CX-89-115, 1989 WL 90327, *1 (Minn. Ct. App. Aug. 15, 1989) (state statutes requiring motor vehicle registration, insurance and license fees are constitutional); State v. Weisman, No. CO-88-811, 1988 WL 113752, *3 (Minn. Ct. App. Nov. 1, 1988) (rejecting appellant's argument that various Minnesota motor vehicle statutes, including requirement to display license plates were unconstitutional and noting that appellant had confused the constitutional "right to travel" with the privilege of operating a motor vehicle on public highways, which may be regulated by the public authority), review denied, Dec. 16, 1988 (Minn.), cert. denied 489 U.S. 1080 (1989); Anderson v. Commissioner of Highways, 126 N.W.2d 778, 784 (Minn. 1964) ("Permission to operate a motor vehicle upon the public highways is not embraced within the term 'civil rights' and is in the nature of a license or privilege. While the privilege is a valuable one, and may not be unreasonably or arbitrarily taken ways, its enjoyment depends on compliance with conditions prescribed by law and is ways subject to such regulation

and control as public authority may see fit to impose under the police power in the interests of public safety and welfare.").

As such, all defendants' motions to dismiss Counts I and XII, relating to Triemert's constitutional right to travel, should be granted for failure to state a claim under Rule 12(b)(6) and the claim should be dismissed with prejudice.

## C.      Count II--Unreasonable Seizure and Arrest

Triemert claimed that Washington County Deputies Sullivan and Volk violated his constitutional right to remain free from unreasonable seizures under the Fourth Amendment when they seized, arrested, and booked him into the Washington County Jail without a warrant and without lawful authority or probable cause to believe that he had committed a crime. See Complaint, ¶ 100.

In support, Triemert alleged that Deputy Sullivan pulled him over because of his blue message plates. Id., ¶ 35. When Deputy Sullivan asked Triemert for his driver's license, registration, and proof of insurance he replied, "What for? I'm not Driving!" Id., ¶ 24. Triemert refused to answer any questions or cooperate with any tests that Sullivan wanted to perform on Triemert, including a field sobriety test. Id., ¶¶ 34, 37. Deputy Sullivan told Triemert that he was bring arrested for obstruction of legal process and was charged with 3rd Degree Refusal to Submit to Chemical Test, 4th Degree DUI-Alcohol, Obstruction of Legal Process, Expired Registration, Failure to Produce Proof of Insurance, and Failure to Yield Right of Way to an Emergency Vehicle. Id., ¶¶ 36-37.

On October 2, 2013, Triemert was convicted and sentenced on the charges of 3rd Degree Refusal to Submit to Chemical Test, Obstruction of Legal Process - Lawful Execution of Legal Process, Expired Registration, and Failure to Produce Proof of

Insurance.  See  http://pa.courts.state.mn.us/CaseDetail.aspx?CaseID=1616163024.

The Failure to Yield Right of Way to an Emergency Vehicle charge was dismissed and

the Triemert was acquitted on the 4th degree DUI charge.  Id.

The Fourth Amendment guarantees "the right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated." "It is well established that a roadside traffic stop is a 'seizure'

within the meaning of the Fourth Amendment." United States v. Jones, 269 F.3d. 919,

924 (8th Cir. 2001). However, "a traffic violation—however minor—creates probable

cause to stop the driver of a vehicle."  United States v. Linkous, 285 F.3d 716, 719 (8th

Cir. 2002) (citations omitted). This is true even if a valid traffic stop is a pretext for

another investigation. Id. (citation omitted).  Further, "even if [the deputy was] mistaken

about the existence of a violation, 'the validity of a stop depends on whether the officer's

actions were objectively reasonable in the circumstances.'"  United States v. Martin, 411

F.3d 998, 1001 (8th Cir. 2005) (quoting United States v. Smart, 393 F.3d 767, 770 (8th

Cir. 2005)).  Probable cause to support a traffic stop exists when a reasonable officer,

confronted with the facts known to the officer at the time of the traffic stop, could have

believed that there was a fair probability that a violation of law had occurred.  See

United States v. Andrews, 454 F.3d 919, 921 (8th Cir. 2006) (citations omitted).

Based on Triemert's admissions in the Complaint, he was driving without

Minnesota plates and Deputy Sullivan stopped him on this basis.  As stated previously,

a failure to display Minnesota plate violates Minn. Stat. § 169.79, Subd. 1.  Thus,

Triemert cannot make out a viable Fourth Amendment claim pertaining to his traffic

stop, as Deputy Sullivan had probable cause to stop him for a violation of law had occurred as a result of Triemert driving with the blue message plates.

The Court also concludes that there is no viable Fourth Amendment claim arising out of Triemert's arrest. "A warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986)).

Based on the public court record, Triemert went to trial on all the claims for which he was arrested (except for failing to yield to an emergency vehicle) and he was convicted on three of them – 3rd Degree Refusal to Submit to Chemical Test, Obstruction of Legal Process - Lawful Execution of Legal Process, Expired Registration, and Failure to Produce Proof of Insurance. According to the Complaint, Triemert was illegally arrested by Deputy Sullivan for obstruction legal process. See Complaint, ¶ 36. The Eighth Circuit has held that an arrestee's conviction for the underlying offense is a complete defense to a civil rights claim that the arrest was without probable cause. See Malady v. Crunk, 902 F.2d 10, 11-12 (8th Cir. 1990) (citation omitted).

For all of the reasons stated above, Washington County Defendants' motion to dismiss Triemert's Fourth Amendment claims embodied in Count II should be granted and the claim should be dismissed with prejudice.

### D.    Count III--Monell Claims

Triemert sued Washington County, as well Washington County officials Sheriff Hutton, Chief Deputy Sheriff Starry, Commander Dexter and Sheriff's Deputy Sullivan in their official capacities. Suits against government employees in their official capacities

are actually suits against the government entity itself. Kentucky v. Graham, 473 U.S. 159, 165-166 (1985). Therefore, the claims against Hutton, Starry, Dexter and Sullivan in their official capacities are actually against Washington County.

To succeed on § 1983 claims against the government entity (i.e., Washington County), Triemert must allege facts that demonstrate that the government entity had a policy or custom that led to the violation of his Constitutional rights. Monell, 436 U.S. at 694; see also Davison v. City of Minneapolis, Minn., 490 F.3d 648, 659 (8th Cir. 2007) (finding that a city "may be held liable under section 1983 . . . if one of its customs or policies caused the violation of" the plaintiff's constitutional rights") (citing Monell). Plaintiffs who seek to impose liability on local governments "must prove that action pursuant to official municipal policy caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011) (citations and quotations omitted).

In this case, Triemert alleged:

> 103. Prior to May 29, 2013, Defendant Washington County developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in Washington County, which caused the constitutional violations of Mr. Triemert's rights.

> 104. It was the policy and/or custom of Washington County to inadequately supervise and train its employees, including Defendant Deputies Sullivan and Volk, thereby failing to adequately discourage further constitutional violations on the part of its employees.

> 105. These policies and/or customs were the cause of the violations of Mr. Triemert's constitutional rights alleged herein.

Complaint, ¶¶ 103-05.

The conclusory allegations regarding Washington County do not state an actionable <u>Monell</u> claim, because they do not describe any <u>specific</u> policy, custom or practice that allegedly caused a violation of Triemert's constitutional rights. Moreover, there are no other factual allegations in the Complaint showing that an individual Washington County defendant adopted a clearly identified policy, custom or practice that caused his injuries. Indeed, the Complaint does not provide any description of any policy, custom or practice at all. Triemert's vague and conclusory allegations that his injuries were some caused by some unidentified unconstitutional policies, customs or practices is not sufficient to state a <u>Monell</u> claim. <u>Iqbal</u>, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); <u>see</u> <u>also</u> <u>Spiller v. City of Texas City, Police Dept.</u>, 130 F.3d 162, 167 (5th Cir. 1997) (to plead an actionable <u>Monell</u> claim "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts").

Because there are no factual allegations describing any specific policy, custom or practice that was established by any particular defendant, Triemert has failed to plead an actionable <u>Monell</u> claim or any other constitutional claim against Washington County or the individual Washington County defendants in their official capacities. These claims should be dismissed with prejudice given that the underlying allegations of constitutional violations fail as a matter of law.

### E.    Count XII--Due Process Claims Against Defendants

Triemert alleged that "[t]he conduct of the Defendants in depriving Triemert of his right to travel, his private properly, and personal freedom, and mode of locomotion without due process of law constitutes a violation of Plaintiff's rights under the 5th Amendment to the United States Constitution, as incorporated to the States through the 14th Amendment." Complaint, ¶ 116. He also asserted that the "illegal and unethical conduct of the Defendants constitutes denial of Plaintiff due process rights under the 5th and 14th Amendments to the United States Constitution." Id., ¶ 120. These claims all pertain to his alleged illegal stop and arrest arising out of his "message" plates; his refusal to produce a valid driver's license, vehicle registration or proof of insurance; and his refusal to answer Deputy Sullivan's questions and to cooperate with tests Deputy Sullivan attempted to administer. It is not entirely clear by the Complaint if Triemert is only a asserting a procedural due process claim or if he is making a procedural and substantive due process challenge. As such, the Court addresses both claims.

### 1.    Procedural Due Process

To prevail on a Fourteenth Amendment a procedural due process claim, a plaintiff "must first demonstrate that he was deprived of life, liberty or property by government action." Orr v. Larkins, 610 F.3d 1032, 1034 (8th Cir. 2010) (citing Phillips v. Norris, 320 F.3d 844 (8th Cir. 2003)); see also Wilkinson v. Austin, 545 U.S. 209, 221 (2003) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' …

or it may arise from an expectation or interest created by state laws or policies,")
(citations omitted).

Given that the gravamen of the Complaint is the illegal seizure of Triemert's
person and property, the Court concludes that the protections of the Fourth Amendment
and not procedural due process apply:

> The Fourth Amendment was tailored explicitly for the
> criminal justice system, and its balance between individual
> and public interests <u>always has been thought to define the
> 'process that is due' for seizures of person or property in
> criminal cases,</u> including the detention of suspects pending
> trial. Part II—A, supra. Moreover, the Fourth Amendment
> probable cause determination is in fact only the first stage of
> an elaborate system, unique in jurisprudence, designed to
> safeguard the rights of those accused of criminal conduct.

See <u>Gerstein v. Pugh</u>, 420 U.S. 103, 125 n. 27 (1975) (emphasis added); <u>see also</u>

<u>United States v. James Daniel Good Real Prop.</u>, 510 U.S. 43, 51 (1993) ("It is true, of

course, that the Fourth Amendment applies to searches and seizures in the civil context

and may serve to resolve the legality of these governmental actions without reference to

other constitutional provisions.").

Any due process related to any further deprivation of his liberty and property[10]
will be addressed by the process afforded as part of any criminal prosecution. <u>See</u>
Section III.C, <u>supra</u>. Because a procedural due process claim is an inappropriate

---

[10]     This Court notes that no notice or pretrial deprivation hearing was required to tow
Triemert's vehicle after his arrest based on the public interest of preventing continued
illicit use of the vehicle and to ensure that the vehicle was not damaged or posed a risk
to traffic on the road. <u>See</u> <u>Hopkins v. City of Bloomington</u>, Civil No. 12-1943 (JRT/JJG),
2013 WL 5406671, *6-7 (D. Minn. Sept. 25, 2013) (citing <u>Fuentes v. Shevin</u>, 407 U.S.
67, 90-91 (1972); <u>Calero–Toledo v. Pearson Yacht Leasing Co.</u>, 416 U.S. 663, 679
(1974)). Moreover, Triemert admitted that his vehicle was returned to him after four
days, and there is no allegation that the vehicle is subject to further forfeiture
proceedings.

vehicle by which to seek vindication of a purportedly unlawful stop and arrest, defendants' motions to dismiss Triemert's procedural due process claim should be granted and the claim should be dismissed with prejudice.[11]

## 2. Substantive Due Process

"To recover for a deprivation of substantive due process, a 'plaintiff 'must demonstrate both that the official's conduct was conscience-shocking, and that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" Lawrence v. City of St. Paul, 740 F. Supp.2d 1026, 1037 (D. Minn. 2010) (quoting Slusarchuk v. Hoff, 346 F.3d 1178, 1181-82 (8th Cir. 2003), quoting Moran v. Clarke, 296 F.3d 638, 651 (8th Cir. 2002) (en banc)); see also Dodd v. Jones, 623 F.3d 563, 567 (8th Cir. 2010), (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8 (1998) ("state officials are liable, on a theory of substantive due process, only if their actions are so egregious or outrageous as to 'shock the contemporary conscience.'"). "[T]he theory of substantive due process

_____

[11] While Triemert also complained that had to wait 45 hours before being appearing before a judge and being released (see Complaint, ¶¶ 62-80), any resulting claim is derived from Triemert's rights under the Fourth Amendment, under which an arrestee is entitled to a probable cause determination within 48 hours absent "a bona fide emergency or other extraordinary circumstance." Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991); see also Gerstein, 420 U.S. at 114 ("[T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."). Because Triemert received his hearing and was released from jail within 45 hours (Complaint, ¶ 80), the Complaint does not state a viable due process claim relating to the length of his stay in jail. Moreover, the additional two hours it took to process his release (Complaint, ¶ 80) is not actionable under the Fourth or Fourteenth Amendments based on the facts set forth in the Complaint. Dye v. County of Hennepin, Civ. No. 03-4894 (DWF/SRN), 2005 WL 113561, *4 (D. Minn. Jan. 18, 2005) (finding a 10.5 hour delay to be inactionable).

is properly reserved for truly egregious and extraordinary cases." Myers v. Scott Cnty., 868 F.2d 1017, 1018 (8th Cir. 1989).

The fact that Mayor reported to Deputy Sullivan that Triemert's vehicle did not have Minnesota plates, which Triemert has admitted, does not amount to conduct that is so egregious or outrageous as to "shock the contemporary conscience." Further, the fact that Deputy Sullivan arrested Triemert for obstruction of justice, for which he was ultimately convicted, cannot sustain a substantive due process violation. Finally, the Court concludes that Triemert's allegations regarding his incarceration during the 45-hour period from his arrest to seeing a judge and release (Complaint, ¶¶ 62-80), even if true, are not so egregious so as to state a claim for a violation of substantive due process based on the alleged conduct of the named defendants.[12]

For all of these reasons, this Court recommends that Triemert's due process claims against all defendants be dismissed with prejudice.

## F.    Count XIII--Section 1983 Conspiracy

With regard to his conspiracy claim, Triemert alleged in Count XIII:

> 117. The Defendants owed Triemert a duty under the 5th and 14th Amendments not to violate his rights under the United States Constitution as a conman law citizen of the United States. The Defendants' overt acts denied him due process of law by various communications among Defendants to deprive Triemert of his private property and right to travel in his private automobile.

> 118. The conduct of the Defendants to participate in a conspiracy to deprive Triemert of his properly and right to travel in his private automobile, was an obvious interference with his 5th Amendment rights.

---

[12]    The only specific factual allegation regarding the conduct of the named defendants was that defendant Sutton was responsible for placing him with "hardened criminals" in jail while awaiting his hearing. See Complaint, ¶ 68.

* * *

124. The aforementioned conduct of all of the Defendants to communicate and participate in the conspiracy to deprive Triemert of his private automobile, personal freedom, and right to travel freely unencumbered upon the land constitutes civil conspiracy and/or collusion.

125. By all Defendants participating in the communications involving the conspiracy to falsely arrest and or deprive Triemert of his right to travel and private property, the Defendants acted with the intent of engaging in illegal and unethical activity having full knowledge that such acts were substantially certain to result in injury and detriment to Triemert, his family, and his cause to travel freely upon the land, constitutes civil conspiracy and/or collusion.

126. The conduct of the Defendants in conspiring to deprive Triemert of his rights and property and personal freedom while aimed at destroying Triemert financially, and ruining his family relationships constitutes civil conspiracy and/or collusion.

127. The conduct of all of the Defendants set forth herein constitutes civil conspiracy and/or collusion.

Complaint, ¶¶ 117, 118, 124-27.

"To prove a § 1983 conspiracy claim, [plaintiff] must show 'that the defendant conspired with others to deprive…[him] of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff.'" Lawrence v. City of St. Paul, Civil No. 09-2198 (PJS/JJK), 2010 WL 3724380 at *20 (D. Minn. 2010) (quoting Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999)); see also Livers v. Schenck, 700 F.3d 340, 360-61 (8th Cir. 2012) (marks and citation omitted) ("To prove a civil conspiracy under § 1983, Livers and Sampson must show (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken;

(4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy."). Furthermore, "a conspiracy claim under § 1983 'requires allegations of specific facts tending to show a meeting of the minds among the alleged conspirators.'" Id.; see also Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010) (a conspiracy under §1983 "requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators") (quoting Kearse v. Moffett, 311 F.3d 891, 892 (8th Cir. 2002)); Dossett v. First State Bank, 399 F.3d 940, 951 n.2 (8th Cir. 2005 (citing cases regarding the requirement that a §1983 conspiracy requires evidence of an agreement or "meeting of the minds."); Duvall v. Sharp, 905 F.2d 1188, 1189 (8th Cir. 1990) (to plead conspiracy in a § 1983 action, a complaint must allege specific facts suggesting mutual understanding among the conspirators "to take actions directed toward an unconstitutional end"). "[T]hat two people had the opportunity to conspire—i.e. that they could have met with each other, or called each other or emailed each other—is obviously not sufficient to "nudge[ ]" a conspiracy claim "across the line from conceivable to plausible." Lawrence, 2010 WL 3724380 at *21 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In this case, Triemert did not specifically identify specific facts tending to show a meeting of the minds among the alleged conspirators. As a result, his conspiracy claim fails under the standards articulated by the Supreme Court in Iqbal and Twombly. Even if the conspiracy claim is based on Triemert's allegation that Mayor McCarthy notified Deputy Sullivan or the Washington County Sheriff's Department about Triemert being in the area with his truck displaying the "blue courtesy plates," (see Complaint, ¶ 60), "[v]arious people engaged in investigating and reporting suspected criminal activity does

not amount to conspiracy." <u>Livers</u>, 700 F.3d at 361-362 (marks and citation omitted). Here, Triemert asserted in the Complaint that the vehicle he was driving did not have Minnesota plates. <u>See</u> Complaint, ¶¶ 35, 50-58, 60. Further, Minn. Stat. § 169.79, subd. 1, which the Court has concluded does not violate Triemert's constitutional rights, requires the display of Minnesota plates. Therefore, based on the facts alleged in the Complaint, the fact that Mayor McCarthy notified Deputy Sullivan of a violation of state law cannot be the basis of a conspiracy to deprive him of his civil rights. As a result, his conspiracy claim fails as a matter of law. All defendants' motions to dismiss this claim should be granted and the claim should be dismissed with prejudice.

## G. Counts IV, V and XI--State Law Claims

Having disposed of all of Triemert's federal claims, the Court declines to exercise supplemental jurisdiction over his remaining state-law claims for law false imprisonment, intentional infliction of emotional distress and aggravated assault. <u>See</u> 28 U.S .C. § 1367(c)(3) (court may, sua sponte, decline to exercise supplemental jurisdiction over pendent state-law claims if it has dismissed all claims over which it had original jurisdiction); <u>Johnson v. City of Shorewood</u>, 360 F.3d 810, 819 (8th Cir. 2004) (when all federal claims are eliminated before trial, balance of factors to be considered in deciding whether to exercise supplemental jurisdiction over pendent state-law claims typically militates against exercising jurisdiction) (citing <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n. 7 (1988)).

## IV. RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.      Defendant City of Lake St. Croix Beach Mayor Tom McCarthy's Motion to Dismiss Complaint [Docket Nos. 13, 24] be **GRANTED**.  Plaintiff's Complaint against City of Lake St. Croix Beach Mayor Tom McCarthy should be dismissed **WITH PREJUDICE**.

2.      Defendants' Washington County Sheriff William Hutton, Chief Deputy Dan Starry, Commander Cheri Dexter and Sheriff's Deputy Nick Sullivan Motion to Dismiss Complaint [Docket No. 29] be **GRANTED**.  All Counts in the Complaint should be dismissed **WITH PREJUDICE,** except for Counts IV, V and XI, which should be dismissed **WITHOUT PREJUDICE**.


Dated:       November 18, 2013

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 2, 2013** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.